JOHN G. WILLISON, Plaintiff-Appellant, v. ECONOMY FIRE AND CASUALTY COMPANY, Defendant-Appellee.

Fourth District    No. 4—97—0462

Argued January 27, 1998.—Opinion filed February 9, 1998.

Marc J. Ansel (argued), of Law Office of Marc J. Ansel, Ltd., of Champaign, for appellant.

Evan H. Johnson and Michael A. Walsh (argued), both of Erickson, Davis, Murphy, Johnson, Griffith & Walsh, Ltd., of Decatur, for appellee.

PRESIDING JUSTICE GARMAN delivered the opinion of the court:

This is a declaratory judgment action filed in the circuit court of Douglas County by plaintiff John G. Willison against defendant Economy Fire and Casualty Company, seeking a declaratory judgment as to the rights and liabilities of the parties with respect to a personal auto insurance policy issued by defendant to plaintiff's parents. Plaintiff was injured in an automobile accident and sought to stack underinsured motorist (UIM) coverage under the personal auto policy with the UIM coverage under his father's business auto

policy, also issued by defendant. Plaintiff had previously recovered UIM benefits under the business auto policy. Both parties filed motions for summary judgment. The trial court denied plaintiff's motion and entered summary judgment for defendant. Plaintiff now appeals. We affirm.

Plaintiff's complaint was filed in June 1996 and alleged that defendant had issued to his parents two policies of automobile liability insurance. One was a business auto policy and the other was a personal auto policy. On December 31, 1994, plaintiff was a passenger in an automobile and was involved in an accident in which he sustained bodily injuries. At the time, plaintiff was living with his parents. Plaintiff recovered $75,000 (the policy limits) from the insurance company insuring the driver. Plaintiff later recovered $25,000 under the UIM provisions of the business auto policy issued by defendant, which represented the limits of UIM benefits available under that policy. Plaintiff made a demand upon defendant for benefits under the UIM provision of the personal auto policy, but the demand was refused as the parties did not agree on which provisions of the policy applied to plaintiff's demand.

In defendant's answer, it alleged that both the personal auto policy and the business auto policy have a limit of $100,000 (each person) of UIM coverage.

On July 22, 1996, defendant filed a motion for summary judgment. UIM coverage had been added as an amendatory endorsement to the personal auto policy. That endorsement replaced former part IV of the policy, which had covered only uninsured motorist benefits. The provisions of the personal auto policy in question are as follows:

"PERSONAL AUTO FORM

* * *

DEFINITIONS

Throughout this policy, 'you' and 'your' refer to the 'named insured' shown in the Declarations and the spouse if a resident of the same household. ***

* * *

Family member means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child, provided neither such family member nor such family member's spouse owns a motor vehicle.

* * *

PART VI—GENERAL CONDITIONS

\* \* \*

## G. TWO OR MORE AUTO POLICIES

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

\* \* \*

## PERSONAL AUTO UNINSURED MOTORISTS AMENDATORY—ILLINOIS

PART IV—UNINSURED MOTORISTS COVERAGE is replaced by the following:

\* \* \*

B. Insured as used in this Part means:
1. you or any family member.

\* \* \*

## OTHER INSURANCE

If there is other applicable similar insuran[ ]ce available under more than one policy or provision of coverage:

1. Any recovery for damages for bodily injury sustained by an insured may equal but not exceed the higher of the applicable limit for any one vehicle under this insurance or any other insurance.

2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

3. We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits."

■ In its motion, defendant argued that the "OTHER INSURANCE" provision of part IV (UIM coverage) of the policy applied, thus barring plaintiff from stacking the UIM coverages of the business auto policy and personal auto policy because plaintiff, under the definitions stated in that part, is considered an insured. Defendant noted that paragraph No. 1 of the "OTHER INSURANCE" provision of part IV (UIM coverage) is commonly known as an "anti-stacking" clause and is specifically contemplated by section 143a—2(5) of the Illinois Insurance Code (Code) (215 ILCS 5/143a—2(5) (West 1996)), which states in pertinent part as follows:

"Nothing herein shall prohibit an insurer from setting forth policy terms and conditions which provide that if the insured has coverage available under this Section under more than one policy or provision of coverage, any recovery or benefits may be equal to,

but may not exceed, the higher of the applicable limits of the respective coverage, and the limits of liability under this Section shall not be increased because of multiple motor vehicles covered under the same policy of insurance."

Defendant argued that the "OTHER INSURANCE" provision is clear and unambiguous and should be enforced as written. As a son of the named insured and a resident of the insured's household, plaintiff is an insured as that term is defined in part IV (UIM coverage) of the policy and he cannot recover more than a total of $100,000 in UIM benefits.

On September 11, 1996, plaintiff filed a motion for summary judgment in which he argued that the court should apply the clause in part VI (General Conditions) of the policy entitled, "TWO OR MORE AUTO POLICIES." Plaintiff insisted that this provision applied because the instant case involves two policies issued by the same carrier, whereas the clause entitled "OTHER INSURANCE" in part IV (UIM coverage) of the policy applies only to coordination of UIM benefits with policies issued by different carriers. On May 12, 1997, the trial court entered an order denying plaintiff's motion for summary judgment and granting defendant's motion.

On appeal, plaintiff argues that the anti-stacking clause in part VI (General Conditions) of the personal auto policy applies to this case. He believes this clause applies because it refers specifically to multiple policies issued by defendant, *i.e.*, multiple policy, single carrier stacking. According to plaintiff, the anti-stacking clause in part IV (UIM coverage) of the personal auto policy applies only to stacking coverages in policies issued by different carriers, *i.e.*, multiple policy, multiple carrier stacking.

■ Summary judgment is proper when the pleadings, depositions, and admissions, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Champaign National Bank v. Babcock*, 273 Ill. App. 3d 292, 299, 652 N.E.2d 848, 853 (1995). When ruling on a motion for summary judgment, a trial court must view all evidence in the light most favorable to the nonmovant. *Malone v. American Cyanamid Co.*, 271 Ill. App. 3d 843, 845, 649 N.E.2d 493, 495 (1995). This court reviews summary judgment orders *de novo*. *Sandstrom v. De Silva*, 268 Ill. App. 3d 932, 935, 645 N.E.2d 345, 347 (1994).

■ An insurance policy is a contract and must be interpreted in accordance with rules of contract construction. *Gonzalez v. State Farm Mutual Automobile Insurance Co.*, 242 Ill. App. 3d 758, 762, 611 N.E.2d 38, 41 (1993). The function of a court in construing an in-

surance policy is to ascertain and give effect to the intention of the parties as expressed in the policy. *De los Reyes v. Travelers Insurance Cos.*, 135 Ill. 2d 353, 358, 553 N.E.2d 301, 304 (1990).

> "Where an ambiguity exists in an insurance policy the policy is to be construed liberally to effectuate coverage. [Citation.] However, this rule of construction is inapplicable where no real ambiguity exists. [Citation.] A policy provision is ambiguous if, considering the policy as a whole, it is subject to more than one reasonable interpretation. [Citation.] If the words of a policy can reasonably be given their plain, ordinary and popular meaning, the provisions should be applied as written, and the parties should be bound by the agreement made. [Citation.] The interpretation and construction of an insurance policy where there are no material issues of fact is a question of law, and a reviewing court may make an independent determination on such a question." *Allstate Insurance Co. v. Eggermont*, 180 Ill. App. 3d 55, 60-61, 535 N.E.2d 1047, 1049 (1989).

Plaintiff argues that the *type* of stacking determines which clause of the personal auto policy applies in a given case. Thus, since this case involves coverages in two different policies issued by defendant, plaintiff believes the "TWO OR MORE AUTO POLICIES" clause in part VI (General Conditions) of the policy controls. Defendant, on the other hand, argues that since the anti-stacking clause in the UIM coverage section of the personal auto policy specifically applies to UIM coverage and does not specifically refer to policies issued by different carriers, this clause is the one applicable to plaintiff. If defendant's argument is correct, plaintiff may not stack the UIM coverages of the personal auto policy and the business auto policy because he is an "insured" for purposes of the UIM coverage section. However, if plaintiff's argument is correct, he would be permitted to stack UIM coverages because he is not an "insured" under part VI (General Conditions) of the personal auto policy.

We conclude that we must reject plaintiff's argument and hold that he is not entitled under the personal auto policy to stack UIM coverages. Plaintiff cites no case in which the outcome was controlled by the type of stacking clause involved. He contends that Illinois courts have recognized that distinguishing the type of stacking involved in a particular case is essential to resolution of issues raised in stacking disputes. In support of this statement, plaintiff cites *Frigo v. Motors Insurance Corp.*, 271 Ill. App. 3d 50, 648 N.E.2d 180 (1995), in which plaintiffs attempted to stack medical payments coverages and UIM coverages under their insurance policy covering three motor vehicles. The trial court found the policy ambiguous and

granted summary judgment to plaintiffs. The appellate court reversed, finding the policy language clear and unambiguous that stacking was not allowed. In the course of its opinion, the court stated that issues of coverage raised because of multiple vehicles insured under a single policy are best decided without regard to multiple coverage cases with more than one policy in question. *Frigo*, 271 Ill. App. 3d at 59, 648 N.E.2d at 186. However, this comment was not necessary to the outcome of the case. The *Frigo* court's decision rested, not on the type of stacking involved, but on the language of the policy.

Plaintiff also cites *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179, 620 N.E.2d 355 (1993), in which a mother and her minor child sought to stack uninsured motorist coverages of two policies issued by the defendant. The question as to who was allowed to stack coverages was resolved by looking to the language of the anti-stacking clause of the policy. On ultimate appeal to the supreme court, it was determined that the mother was not allowed to stack because she was an insured under the policy definition of the term "you." That term included the insured and his or her spouse. However, the daughter was allowed to stack coverages because she was not an insured under that definition. *Bruder*, 156 Ill. 2d at 189, 620 N.E.2d at 360. Significantly, the *Bruder* decision turned not on the type of stacking involved, but on the language of the anti-stacking clause of the policy and its applicability to the plaintiffs. Plaintiff in the instant case believes that the "OTHER INSURANCE" provision of the UIM section of the policy applies only to multiple policy, multiple carrier stacking. He points out that the "TWO OR MORE AUTO POLICIES" clause in the "GENERAL CONDITIONS" section of the personal auto policy specifically refers to the multiple policy, single carrier stacking issue and the "OTHER INSURANCE" provision in the UIM section does not. Plaintiff reads the three clauses of the latter provision together to arrive at the conclusion that it applies only to coordination of benefits between different carriers. However, as defendant points out, plaintiff has ignored the introductory phrase of the "OTHER INSURANCE" provision, which states, "If there is other applicable similar insuran[ ]ce available under more than one policy or provision of coverage ***." When this introductory phrase is read in conjunction with the first clause of the provision, the intent of the provision becomes clear. The language of this clause clearly applies to any type of stacking of UIM coverages, whether multiple policy, multiple carrier or multiple policy, single carrier or multiple vehicle, single carrier. Nothing in the "OTHER INSURANCE" provision suggests that it applies *only* to policies issued by carriers other than defendant. Plaintiff's strained interpretation of this provision in an at-

tempt to make it inapplicable to policies issued by defendant is not reasonable.

All the provisions of an insurance contract, not just an isolated part, should be read together to interpret it and to determine whether an ambiguity exists. *General Insurance Co. of America v. Robert B. McManus, Inc.*, 272 Ill. App. 3d 510, 514, 650 N.E.2d 1080, 1083 (1995). The rules of construction do not require courts to reach strained or unreasonable interpretations that would have the effect of invalidating the contract between the parties. *General*, 272 Ill. App. 3d at 514, 650 N.E.2d at 1083. Plaintiff's interpretation of the "OTHER INSURANCE" provision of the UIM section of the policy seeks to create an ambiguity where none exists. We note that the introductory phrase of that provision, taken together with the first clause thereof, is very close to the wording of section 143a—2(5) of the Code, the statutory authority for anti-stacking clauses. The phrases "other applicable similar insuran[ ]ce" and "any other insurance" may just as easily apply to policies issued by defendant as to policies issued by a different carrier.

We also note that part IV (UIM coverage) of the personal auto policy applies specifically to UIM coverage and contains its own set of definitions that apply to the UIM coverage. Plaintiff does not dispute that defendant has the right to define the term "insured" differently for UIM coverage and for other coverages. It is a well-settled principle of contract construction that when a contract contains both general and specific provisions relating to the same subject, the specific provision controls. *Grevas v. United States Fidelity & Guaranty Co.*, 152 Ill. 2d 407, 411, 604 N.E.2d 942, 944 (1992); *Dolezal v. Plastic & Reconstructive Surgery, S.C.*, 266 Ill. App. 3d 1070, 1081, 640 N.E.2d 1359, 1366 (1994). In the instant case, the UIM section of the personal auto policy contains an anti-stacking clause, together with a set of definitions that apply only to recovery of UIM benefits under that section. The anti-stacking clause in that section specifically relates only to uninsured motorist and UIM coverages. There is no ambiguity in the anti-stacking clause in part IV (UIM coverage) of the policy. It clearly applies both to policies issued by defendant and policies issued by other carriers. The anti-stacking clause in part VI (General Conditions) of the policy is a more general clause applying to other coverages available under the policy. Thus, there is no conflict between the two anti-stacking clauses. For these reasons, we conclude the circuit court did not err in granting summary judgment to defendant.

Accordingly, the judgment of the circuit court granting summary judgment to defendant is affirmed.

Affirmed.

KNECHT and STEIGMANN, JJ., concur.